**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00228-MR**

| | |
|---|---|
| **THE VILLAGE TAVERN, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **CATBIRD HOSPITALITY, LLC, and** ) | |
| **JASON SAMUEL CANCILLA,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default
Judgment [Doc. 9].

# I.    PROCEDURAL BACKGROUND

The Plaintiff, The Village Tavern, Inc., commenced this action against
the Defendants, Catbird Hospitality, LLC and Jason Cancilla, asserting
claims for trademark infringement and false designation of origin under the
Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); a claim for unfair competition
under North Carolina law; and a claim for unfair and deceptive trade
practices under North Carolina General Statute section 75-1.1 ("Chapter
75"). [Doc. 1].

Each Defendant was properly served with the Summons and Complaint but failed to answer or otherwise defend. Accordingly, the Court entered default against both Defendants on October 15, 2021. [Doc. 7]. The Plaintiff now moves for entry of a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. [Doc. 9]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once a defendant has been defaulted, the plaintiff may then seek a default judgment. If the plaintiff's claim is for a sum certain or can be made certain by computation, the Clerk of Court may enter the default judgment. Fed. R. Civ. P. 55(b)(1). "In all other cases, the [plaintiff] must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). A defendant, however, "is not held . . . to admit conclusions of law." Id. (alteration in original) (quoting Nishimatsu,

2

515 F.2d at 1206).  The Court therefore must determine whether the alleged facts state a claim for relief.  GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

## III.  PLAINTIFF'S FACTUAL ALLEGATIONS

The well-pleaded factual allegations of the Plaintiff's Complaint having been deemed admitted by virtue of the Defendants' default, the following is a summary of the relevant facts.

The Plaintiff, The Village Tavern, Inc. ("Village"), is a corporation organized and existing under the laws of the State of North Carolina, with its principal office located in Winston-Salem, North Carolina.  [Doc. 1 at ¶ 1]. Defendant Catbird Hospitality, LLC ("Catbird") is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal office in Cashiers, North Carolina.  [Id. at ¶ 2].  Defendant Jason Cancilla ("Cancilla") is a citizen and resident of the State of North Carolina, residing in Sapphire, North Carolina.  [Id. at ¶ 3].

Since 1984, Village has been operating its restaurant in Winston-Salem, North Carolina under the trademark "VILLAGE TAVERN."  [Id. at ¶ 6].  Over the past thirty-eight years, Village has extensively advertised such mark, and it is now "highly recognizable" to the public as a "unique venue for high quality food and service."  [Id. at ¶¶ 28-29].  During that same period

3

Village has expanded its business, opening a second location in Winston-Salem, two additional locations in North Carolina, and four locations in other states.  [Id. at ¶ 8].

Since 1990, Village has owned the federally registered trademark VILLAGE TAVERN®, U.S. Reg. No. 1,599,993.  [Id. at ¶ 9; see also Doc. 1-2 (official United States Patent and Trademark Office ("USPTO") registration)].  Village's now incontestable ownership of the VILLAGE TAVERN mark guarantees Village the exclusive right to use such mark in connection with restaurant services nationwide.  [Doc. 1 at ¶ 10].

Catbird and Cancilla operate a restaurant in Cashiers, North Carolina.  [Id. at ¶ 12].  The Defendants' restaurant operates under the names "The VILLAGE TAVERN" and "Cashiers VILLAGE TAVERN."  [Id.].  The exterior of such restaurant features at least two prominent signs displaying the words "VILLAGE TAVERN" in black capital letters, as in the Plaintiff's registered trademark.  [Id. at ¶ 14].  The Defendants also employ the same mark on their website, as part of the restaurant's online menu.  [Id. at ¶ 15].

Sometime after the Defendants' restaurant opened, Village received a written complaint from "at least one" person who was dissatisfied with the food and service at the Defendants' restaurant.  [Id. at ¶ 16].  Having received such complaint and knowing that it had not granted the Defendants

permission to use the VILLAGE TAVERN mark, Village sent the Defendants a cease and desist letter on June 16, 2021. [Id. at ¶¶ 17, 30]. Such letter informed the Defendants that Village is the federally registered owner of the VILLAGE TAVERN mark and demanded that the Defendants cease their use of such mark in connection with the operation of their restaurant. [Doc. 1-1 (cease and desist letter)].

The Defendants did not respond to Village's letter. [Doc. 1 at ¶ 19]. In light of the Defendants' lack of responsiveness, Village contacted Cancilla via email on July 20, 2021. [Id.]. Cancilla replied to Village's email that same day. [Id.]. In his reply, Cancilla thanked Village for its "patience" and explained that "[n]ew signage ha[d] been ordered with a name change." [Id.]. Expressing a desire to eliminate any confusion, Cancilla claimed to have already taken down the restaurant's website and noted that he would take down the Google listing, if he could gain ownership of such listing. [Id.]. Cancilla disclaimed any intent to confuse consumers, positing that he used the words "VILLAGE TAVERN" in reference to the local expression that Cashiers, North Carolina is a "village." [Id.]. Recognizing, however, that confusion was occurring, Cancilla promised to remove all existing signage "[i]f new signage [was] not in place by the end of [July 2021]." [Id.].

Despite Cancilla's promises, the Defendants' signage remained in place, with the words "VILLAGE TAVERN" prominently displayed, through at least August 12, 2021. [Id. at ¶¶ 14, 20-21]. Moreover, despite Cancilla's assertion that the restaurant website had been taken down prior to July 20, 2021, such website remained accessible in August 2021. [Id. at ¶ 22]. Thereafter, Village made repeated attempts to contact the Defendants, without success. [Id. at ¶ 23]. On August 19, 2021, Village filed the instant action.

## IV. DISCUSSION

### A. Trademark Infringement and False Designation of Origin[1]

Section 32 of the Lanham Act provides that the registrant of a trademark may bring a civil action against:

> [a]ny person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is

---

[1] The Plaintiff alleges two claims under 15 U.S.C. § 1125(a), one for "false designation of origin" (Count One) and one for "unfair competition" (Count Three). [Doc. 1 at ¶¶ 24-26, 37-45]. Section 1125(a) creates "two distinct bases of liability": false association (also known as false designation of origin) and false advertising. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014). The Fourth Circuit describes both theories of liability as "unfair competition causes of action." Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016). Because "unfair competition" is not a separate theory of liability, and because the Plaintiff does not make any specific allegations of false advertising, the Court will address the Plaintiff's counts one and three as *a single* § 1125(a) false designation of origin claim.

likely to cause confusion, or to cause mistake, or to deceive[.]

15 U.S.C. § 1114(1)(a).  Section 43(a) of the Act provides that a registrant

may bring a civil action against:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

"Both infringement and false designation of origin have five elements."

Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005).  To prevail on such

causes of action, a plaintiff must establish:

> (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.

Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (quoting

15 U.S.C. § 1114(a)) (citing Louis Vuitton Malletier S.A. v. Haute Diggity Dog,

7

LLC, 507 F.3d 252, 259 (4th Cir. 2007); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001)).

Here, the Plaintiff's factual allegations, which are deemed admitted by virtue of default, establish that the Plaintiff is the registered owner of the VILLAGE TAVERN mark for use in connection with restaurant services. Despite the Plaintiff's registered ownership of the VILLAGE TAVERN mark, the Defendants used the mark, displaying it on a website and various restaurant signs. Such use occurred "in commerce" because the Defendants displayed the mark on the internet, a channel of interstate commerce. See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359, 363-64 (4th Cir. 2003) (holding that "commerce" for purposes of the Lanham Act "is coterminous with that commerce that Congress may regulate under the Commerce Clause of the United States Constitution"); United States v. Roof, 10 F.4th 314, 385-87 (4th Cir. 2021) (holding that the defendant's use of the internet, "a channel of interstate commerce," in planning and carrying out his crimes placed his conduct "within the reach of Congress's Commerce Clause authority"). Moreover, such use occurred without the Plaintiff's permission.

As to whether the Defendants' use of the Plaintiff's mark occurred "'in connection with the sale, offering for sale, distribution, or advertising' of

goods or services," the Defendants displayed the mark on the front entrance of their restaurant, on a street sign for their restaurant, and on the website for their restaurant. Moreover, the mark formed the primary part of the Defendants' business names: "Cashiers VILLAGE TAVERN" and "the VILLAGE TAVERN." As such, the Defendants used the Plaintiff's mark in connection with the operation of their restaurant business.

With respect to the final element—likelihood of consumer confusion—the Fourth Circuit has identified a number of factors to determine whether such confusion is likely to occur. Those factors include:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone, 676 F.3d at 153 (citation omitted). These factors, however, "are not always weighted equally, and not all factors are relevant in every case." Louis Vuitton, 507 F.3d at 259-60 (citation omitted). At bottom, "the likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case." Variety Stores, Inc. v.

Wal-Mart Stores, Inc., 888 F.3d 651, 666 (4th Cir. 2018) (quoting Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992)).

Here, the admitted facts establish that the Plaintiff has used the VILLAGE TAVERN mark since 1984 and has been the mark's registered owner since 1990.  To determine the strength of such mark, the Court must assess both its "conceptual strength and commercial strength."  George & Co. v. Imagination Ent. Ltd., 575 F.3d 383, 393 (4th Cir. 2009) (quoting CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006)).

"A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful."  Id. at 393-94 (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)).  "'Fanciful,' 'arbitrary,' and 'suggestive' marks are inherently distinctive, and thus receive the greatest protection against infringement."  Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996) (citation omitted).  A mark is presumably suggestive, and therefore inherently strong or distinctive, if the USPTO permitted its registration without requiring proof of a secondary meaning.[2]  George & Co., 575 F.3d at 395 (citing Lone Star Steakhouse &

_____

[2] "Secondary meaning is defined as 'the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to

Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 934 (4th Cir. 1995)).

Because the record before the Court indicates that the VILLAGE TAVERN mark was registered without the Plaintiff being required to provide proof of a secondary meaning, the Court must presume the mark is at least suggestive. Id. The Defendants, moreover, have failed to offer any evidence "to rebut the presumption raised by the USPTO's determination." Id. As such, the Court concludes that the Plaintiff's mark is conceptually strong.

To evaluate a mark's commercial strength, a court looks to six factors: "(1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." Id. (citing Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990)). The admitted facts establish that the Plaintiff has "extensively advertised" its mark in connection with the operation of its restaurant and that the Plaintiff's mark is "highly recognizable" to the public as a "unique venue for high quality food and service." [Doc. 1 at ¶¶ 28-29]; see Petro Stopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88, 93 (4th Cir. 1997) (emphasizing

---

the particular business that the mark is meant to identify." U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 525 (4th Cir. 2002) (citation omitted).

that "[t]he strength of a mark ultimately depends on the degree to which the designation is associated by prospective purchasers with a particular source." (internal quotation marks and citation omitted)). Moreover, recognition has occurred for nearly forty years, thirty-two of which occurring while the Plaintiff was the registered owner of the mark. See Perini, 915 F.2d at 126 (noting that the plaintiff's use of its tradename spanned several decades). Thus, the Court concludes that the Plaintiff's mark possesses commercial strength. Considering such commercial strength in combination with the conceptual strength discussed above, the Court concludes that the Plaintiff's mark is strong enough to make consumer confusion more likely. See George & Co., 575 F.3d at 393 ("Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark."). Therefore, the first factor weighs in favor of concluding that consumers are likely to be confused by the Defendants' use of the mark.

In assessing the second likelihood of confusion factor, the similarity between the two marks, the Court must "focus on the dominant portions of the parties' marks." Id. at 396 (citations omitted). Based upon such dominant portions of the marks, the Court must assess "whether there exists a similarity in sight, sound, and meaning which would result in confusion." Id. (citations omitted). Here, the dominant portions of both marks are the

words "VILLAGE TAVERN" in black all capital letters. While the Defendants' signs and menu include descriptive words in small type adjacent to the VILLAGE TAVERN mark, such words do not take away from the identical nature of the dominant portions of the marks. Both the Plaintiff's mark and the Defendants' mark look the same, sound the same, and refer to restaurants. Therefore, this second factor weighs in favor of concluding that consumers are likely to be confused by the Defendants' use of the mark.

The third, fourth, and fifth factors turn on whether the parties provide similar goods and services, in similar markets, and with similar advertising. Id. at 397. Here, the admitted facts establish that both parties operate restaurants. Moreover, both restaurants compete for customers in North Carolina, and both advertise their businesses in an effort to garner public recognition. Thus, all three factors weigh in favor of concluding that consumers are likely to be confused by the Defendants' use of the mark.

The sixth factor requires the Court to assess the Defendants' "intent in adopting" the mark at issue. Id. Here, the admitted facts include a statement from Cancilla in which he disavows any intent to "take advantage of an existing brand." [Doc. 1 at ¶ 19]. He contends that he intended only to draw on the local description of Cashiers, North Carolina as a "village." [Id.]. Moreover, he expresses a desire to "eliminate any confusion as quickly as

13

possible" through removing the Google listing, changing his restaurant name, and putting up new signage. [Id.]. Despite promising to put up new signage by the end of July 2021, however, the admitted facts also establish that Cancilla failed to do as he promised. The signs to which the Plaintiff objected were still in place on August 12, 2021, as was the Defendants' website and online menu. Therefore, while the Court cannot conclude that the Defendants intended to cause consumer confusion when they initially adopted the VILLAGE TAVERN mark, the Defendants' failure to change course (or at least substantial tardiness) after being made aware of Village's registered ownership of such mark undermines any potential assertion of good-faith mistake or coincidence. On balance, the sixth factor is therefore neutral.

"The seventh and most important factor is actual confusion." George & Co., 575 F.3d at 398. In assessing such factor, the Court must balance "the number of instances of actual confusion" against "the background of the number of opportunities for confusion." Id. (citations omitted). Generally, "[e]vidence of only a small number of instances of actual confusion may be dismissed as *de minimis*." Id. (citations omitted). Moreover, where the record reveals a significant number of opportunities for confusion, but the plaintiff produces only a few instances of actual confusion, the court draws

"a strong inference that there is no likelihood of confusion." CareFirst, 434 F.3d at 269.

Here, the admitted facts establish that "at least one disappointed customer" sent the Plaintiff a written complaint "regarding the quality of service and food at [the] *Defendants'* restaurant location." [Doc. 1 at ¶ 16 (emphasis added)]; see Sara Lee, 81 F.3d at 466 (emphasizing that consumers purchased the defendant's products under the mistaken belief that such products were produced by the plaintiff). While this admitted fact demonstrates one incident of actual confusion, the record contains neither facts establishing additional instances of actual confusion nor facts clarifying the number of opportunities for such confusion. Without such facts, the Court has no standard against which to measure the one instance of actual confusion and therefore cannot draw any negative inference from it. See CareFirst, 434 F.3d at 269 (holding that no evidence of actual confusion over the course of nine years "creates a strong inference that there is no likelihood of confusion" (citation omitted)); George & Co., 575 F.3d at 399 (holding that the *de minimis* actual confusion evidence "weigh[ed] heavily against a likelihood of confusion" where the plaintiff sold 500,000 games per year but produced evidence of only four instances of actual confusion (footnote omitted)). Therefore, the Court concludes that the Plaintiff's evidence of

actual confusion shows such to be *de minimis*. Nonetheless, the Court draws no negative inference based upon this conclusion, as there is some evidence of actual confusion. As such, this seventh factor is neutral.

The eighth factor, "the quality of the defendant's product," only applies in "situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods." George & Co., 575 F.3d at 399 (quoting Sara Lee, 81 F.3d at 467). Here, the trademark at issue applies to the sale of prepared food and beverages at a restaurant, not the sale of a particular type of trademarked good. As such, this eighth factor is irrelevant.

Finally, the ninth factor, "the sophistication of the consuming public," only applies "when the relevant market is not the public at-large." Id. at 400 (quoting Sara Lee, 81 F.3d at 467). Here, the relevant market is the general public. Therefore, this ninth factor is also irrelevant.

Examining all of the applicable factors, the Court concludes that five factors preponderate toward a likelihood of consumer confusion, and four factors are either neutral or irrelevant. As such, consumer confusion is likely, and the Plaintiff's well-pleaded factual allegations establish its claims for trademark infringement and false designation of origin against the Defendants.

## C.    North Carolina Unfair Competition[3]

Under North Carolina law, a business may use a trademark or tradename to "designate and identify [its] wares or business," and where the business "has acquired and established a patronage and good will of substantial value, the same will be protected from unfair competition on the part of a rival." Yellow Cab Co. v. Creasman, 185 N.C. 551, 117 S.E. 787, 788 (1923). It is "unfair competition when such rival adopts for his own business, etc., a sign or symbol in such apparent imitation of the former as will likely mislead his customers and the public as to the identity of the goods sold or service rendered." Id. (citations omitted); see also Charcoal Steak House of Charlotte, Inc. v. Staley, 263 N.C. 199, 203, 139 S.E.2d 185, 188 (1964) ("Unfair competition is 'the child of confusion.'" (citation omitted)); Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) ("The North Carolina common law of unfair competition in the context of trademarks . . . is similar to the federal law of trademark infringement.").

Here, the admitted facts establish that the Plaintiff is the registered owner of the VILLAGE TAVERN mark and has used such mark for nearly

---

[3] The Plaintiff labels this claim: "Misappropriation of Good Will." [Doc. 1 at ¶ 46-49]. Upon review of the substance of the claim, however, the Court concludes that such claim is for unfair competition under North Carolina common law. See Yellow Cab Co. v. Creasman, 185 N.C. 551, 117 S.E. 787, 788 (1923).

forty years. The admitted facts also establish that, during the course of such use, the Plaintiff developed substantial consumer recognition and goodwill. As such, the Defendants engaged in unfair competition to the extent they used the VILLAGE TAVERN mark in a way likely to cause consumer confusion. Because the Court has concluded that the Defendants' use of the Plaintiff's mark created a likelihood of consumer confusion, the Plaintiff's well-pleaded factual allegations establish its claim for unfair competition against the Defendants.

### D. North Carolina Unfair and Deceptive Trade Practices

To establish a claim under Chapter 75, a plaintiff must demonstrate that "(1) the defendant engaged in conduct that was in or affecting commerce, (2) the conduct was unfair or had the capacity or tendency to deceive, and (3) the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." Belk, Inc. v. Meyer Corp., 679 F.3d 146, 164 (4th Cir. 2012), as amended (May 9, 2012) (internal quotation marks and citation omitted).

Here, the Defendants' conduct occurred in commerce because they operated a restaurant for profit under the VILLAGE TAVERN mark and displayed such mark on their website. Such conduct was deceptive because, as the Court previously concluded, it was likely to cause consumer

18

confusion regarding the source of the food and services provided at the Defendants' restaurant. Finally, the Plaintiff suffered actual injury as a proximate result of the Defendants' deceptive misrepresentation because at least one consumer was deceived by the Defendants' use of the VILLAGE TAVERN mark. Such deception led the consumer to falsely believe that Village was responsible for the low-quality food and service she received at the Defendants' restaurant. Therefore, the Court concludes that the admitted allegations establish the Plaintiff's Chapter 75 claim against the Defendants.

### E. Remedies Sought

Having determined that the Plaintiff has established its claims by alleging sufficient facts that the Defendants have admitted, the Court now turns to the issue of whether the Plaintiff has demonstrated entitlement to the relief requested. In its motion, the Plaintiff seeks the following remedies:

(1) A permanent injunction enjoining the Defendants and all those acting in concert with the Defendants from making any use of the VILLAGE TAVERN mark and any other marks confusingly similar thereto;

19

(2)  An Order requiring the Defendants to remove from public view any references to the VILLAGE TAVERN mark and any other references to Village or its registered mark;

(3)  An award of statutory damages in an amount not less than $15,000, plus treble damages as allowed by law; and

(4)  An award of costs of this action taxed to the Defendants.

The Court will address each of these requests for relief in turn.

### 1.  Injunctive Relief

Under the Lanham Act, the Court is authorized to issue an injunction "according to principles of equity and upon such terms as the court may deem reasonable" to prevent further violations of trademark law.  15 U.S.C. § 1116(a).  To establish entitlement to injunctive relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (citations omitted).

Here, the admitted facts establish that the Defendants have infringed upon the Plaintiff's federally registered trademark and remain readily able to

continue such infringement.[4]  "[I]rreparable injury regularly follows from trademark infringement."  Lone Star Steakhouse & Saloon, 43 F.3d at 939 (citation omitted).  Specifically, trademark infringement causes a plaintiff to lose control of its business identity and suffer any reputational harm which the infringing party imposes on such identity.  See id.  Such reputational harm occurred in this case when at least one consumer mistook the Defendants' restaurant for the Plaintiff's.  That person not only confused the two businesses, but also lowered her esteem for the Plaintiff's business based upon the low-quality food and service she received at the *Defendants'* restaurant.  Therefore, the Court concludes that the first factor of irreparable injury has been met.

---

[4] According to the Plaintiff, the Defendants ceased their infringing use of the VILLAGE TAVERN mark sometime after the Plaintiff filed this action but before it filed the Motion for Default Judgment.  [Doc. 10 at 10 n.3].  Generally, a request for injunctive relief is moot once the Plaintiff has received the relief sought in such injunction.  See Long v. Pekoske, 38 F.4th 417, 423 (4th Cir. 2022).  A well-recognized exception to this rule exists, however, "when a defendant voluntarily ceases its allegedly improper behavior, [and] there is a reasonable chance that the behavior will resume."  Lighthouse Fellowship Church v. Northam, 20 F.4th 157, 162 (4th Cir. 2021).  Pursuant to such exception, a request for injunctive relief remains justiciable unless the *defendant* demonstrates "that 'it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"  Porter v. Clarke, 852 F.3d 358, 360 (4th Cir. 2017) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)).  Here, the Defendants have presented no evidence from which the Court could determine that such "heavy burden" has been satisfied.  Id. at 364 (citation omitted).  Because the record before the Court indicates that the Defendants "retain[] the authority and capacity to repeat" the infringement, the action is not moot.  Id. (quotation marks and citations omitted).

As for the inadequacy of legal remedies, the loss of reputation and goodwill accompanying trademark infringement results in largely incalculable harm for which damages alone are insufficient.  See U.S. Polo Ass'n v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011).  Moreover, in the absence of an injunction, the Plaintiff would be compelled to bring successive actions for monetary damages in order to recover for such continually accruing, incalculable harm.  See Mon Cheri Bridals, LLC v. Partnerships, No. 3:15-cv-00021-FDW-DCK, 2015 WL 3509259, at *6 (W.D.N.C. June 4, 2015).  Accordingly, the Court concludes that the second factor of inadequate legal remedies has also been satisfied.

As for the balance of hardships, "the hardship to be sustained by the [P]laintiff if the [permanent] injunction is not granted" is substantial.  Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991).  Absent an injunction prohibiting the Defendants' use of the VILLAGE TAVERN mark, the Plaintiff will continue to be deprived of its right to exclusive use of the mark in connection with restaurant services, and it will lose consumer goodwill and suffer reputational harm.  On the other hand, the hardship to be suffered by the Defendants if an injunction is issued is minimal.  See Legend Night Club v. Miller, 637 F.3d 291, 302 (4th Cir. 2011) (emphasizing that the harm to the plaintiffs in the absence of an injunction

"easily outweigh[ed] whatever burden the injunction may impose"). The Defendants may continue to operate a restaurant, serving the same food and beverages in the same geographic area. They will only be enjoined from operating such restaurant under the VILLAGE TAVERN mark or a confusingly similar mark. Accordingly, the Plaintiff has shown that the balance of hardships weighs in its favor.

Finally, "preventing future consumers from being misled" is in the public interest. Lone Star Steakhouse, 43 F.3d at 939 (citations omitted). Enjoining the Defendants' use of the VILLAGE TAVERN mark will further such public interest by requiring the Defendants to operate any future restaurant under a readily distinguishable tradename. Therefore, the Plaintiff has demonstrated that an injunction is in the public interest.

For these reasons, the Court concludes that the entry of a permanent injunction is appropriate. The Court therefore will enter a permanent injunction enjoining the Defendants and all those acting in concert with the Defendants from making any use of the VILLAGE TAVERN mark and any marks confusingly similar thereto; requiring the Defendants to remove all signage featuring the VILLAGE TAVERN mark; and requiring the Defendants to delete and/or remove all internet references through which the Defendants have made improper use of the VILLAGE TAVERN mark,

including but not limited to the Defendants' online menu and its website or webpage.

## 2. Statutory Damages

In certain circumstances, the Lanham Act permits a Plaintiff to elect to recover statutory damages "*instead* of actual damages and profits." 15 U.S.C. § 1117(c) (emphasis added). To recover statutory damages, the Plaintiff must prove that the infringement involved the use of a "counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." Id. The Act defines "counterfeit mark" as "a counterfeit *of a mark* that is registered on the principal register in the [USPTO] for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." Id. § 1116(d)(1)(B)(i). It further defines the word "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." Id. § 1127. "A 'spurious' mark, in turn, is one that is 'fake' and '[d]eceptively suggest[s] an erroneous origin.'" Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 95 n.18 (2d Cir. 2020) (alterations in original) (quoting Spurious, Black's Law Dictionary (11th ed. 2019)). As such, to qualify as a counterfeit trademark, a non-genuine mark must (1) be substantially indistinguishable from the registered mark and (2) be used to

24

designate the same type of goods or services as the registered mark. <u>See</u> <u>Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC</u>, 507 F.3d 252, 269 (4th Cir. 2007); <u>Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.</u>, 908 F.3d 313, 340 (8th Cir. 2018); <u>Louis Vuitton Malletier, S.A. v. Akanoc Sols.</u>, Inc., 658 F.3d 936, 946 (9th Cir. 2011).

Here, the Plaintiff has elected to pursue statutory damages in lieu of actual damages or lost profits. [Doc. 9]. The admitted facts establish that the Defendants' rendition of the VILLAGE TAVERN mark is "substantially indistinguishable" from the Plaintiff's registered mark, as both feature the words VILLAGE TAVERN in black capital letters. <u>Louis Vuitton</u>, 507 F.3d at 269 (citation omitted). Moreover, the Defendants used the identical VILLAGE TAVERN mark in connection with the provision of restaurant services, the same type of services for which the Plaintiff is entitled to exclusive use of the VILLAGE TAVERN mark. Therefore, the Defendants' use of the VILLAGE TAVERN mark constitutes use of a counterfeit mark, and the Plaintiff is entitled to statutory damages on both its trademark infringement claim and its false designation of origin claim.

Where a plaintiff establishes entitlement to statutory damages, such plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark *per type of goods or services* sold, offered for sale, or

distributed, as the court considers just."[5]  15 U.S.C. § 1117(c)(1) (emphasis added); see also Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli, 575 F.3d 693, 698 (7th Cir. 2009) (emphasizing that statutory damages are awarded per type of goods or services sold under the mark, "not per individual item bearing the counterfeit mark" (citation omitted)).  The district court has discretion to award statutory damages within such prescribed range.  See Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001) (applying an analogous provision in the Copyright Act, 17 U.S.C. § 504(c)(1)).  A district court may "weigh the seriousness of the [infringing] conduct in determining the amount of the award."[6]  Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 442 (4th Cir. 2011).

Here, the Plaintiff is entitled to statutory damages for both of its Lanham Act claims.  See 15 U.S.C. § 1117(a), (c).  To that end, the Plaintiff

---

[5] The $200,000 maximum is increased to $2,000,000 where the Court "finds that the use of the counterfeit mark was willful."  15 U.S.C. § 1117(c)(2); see Romag Fasteners, Inc. v. Fossil, Inc., 140 S. Ct. 1492, 1495 (2020).

[6] In Newport News Holdings, the Fourth Circuit analyzed the statutory damages provision in 15 U.S.C. § 1117(d).  See 650 F.3d at 441-42.  Because of the similarity between § 1117(c)(1) and § 1117(d), the Court concludes that the Court of Appeals' analysis also applies to statutory damages awarded under § 1117(c)(1).

seeks $7,500 for the infringement claim and $7,500 for the false designation of origin claim, for a combined award of $15,000.[7]  [Doc. 9 at 2].

In determining the appropriateness of the statutory damages award, the Court considers the following admitted facts.  The Defendants displayed *one* counterfeit mark in connection with *one* type of services sold.  <u>See</u> 15 U.S.C. § 1117(c)(1); <u>Gabbanelli Accordions</u>, 575 F.3d at 698.  The admitted facts do not establish the exact duration of the Defendants' use of such counterfeit mark, but the facts do establish that at least one month of use occurred *after* the Defendants indisputably became aware of the Plaintiff's registered ownership of the VILLAGE TAVERN mark.  However, that month of use occurred after Cancilla disingenuously asserted that the website had already been removed and promised that the infringing signage would soon be removed.  On the other hand, the Defendants did cease using the mark sometime before the Plaintiff moved for a default judgment, and nothing before the Court indicates that such use has resumed.

Since the Plaintiff asserts different theories of recovery regarding the Defendants' singular act of using the VILLAGE TAVERN mark for the

---

[7] The Plaintiff argues that this is "on the lower end of the permissible spectrum" of statutory damages.  [Doc. 10 at 10 n.3].  The lower end, however, would be $2,000, not $15,000.  15 U.S.C. § 1117(a).  The Plaintiff also argues that such an award would stand for its attorneys fees.  Though attorneys fees may be recoverable in this matter, statutory damages are not intended to be a means for recovering such fees, and the Plaintiff has not proven any entitlement to the award of fees.

provision of restaurant services, the Court will award a single statutory damages award for all of the Plaintiff's Lanham Act violations. Considering the relatively short duration of the infringement; the fact that it has voluntarily ceased prior to the Plaintiff's filing of the present motion; the substantial distance between the Plaintiff's establishment and the Defendants' establishment, which limits the harmful confusion; and the fact that the Plaintiff concedes that it is seeking to recover its attorneys fees as part of this award, apart from what statutory damages are supposed to represent, the Court in its discretion awards a total of statutory damages in the amount of $4,000.

### 3. Treble Damages

"Under N.C. Gen. Stat. § 75-16, courts must treble damages if a defendant violates [Chapter 75]." DENC, LLC v. Philadelphia Indem. Ins. Co., 32 F.4th 38, 52 (4th Cir. 2022). Such award of treble damages, however, "is limited to 'damages *proximately caused* by'" the defendant's Chapter 75 violation. Id. (emphasis in original) (quoting Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 74, 529 S.E.2d 676, 684 (2000)). As such, "[p]roof of actual damages" sustained as the proximate result of the defendant's Chapter 75 violation "is an essential element for an award of

treble damages." Shell Oil Co. v. Com. Petroleum, Inc., 928 F.2d 104, 109 n.7 (4th Cir. 1991) (citation omitted).

Here, the Plaintiff requests that the Court treble, pursuant to N.C. Gen. Stat. § 75-16, the statutory damages awarded to the Plaintiff for the Defendants' Lanham Act violations. [Doc. 9 at 2]. North Carolina law, however, does not permit the Court to automatically treble "damages on every claim that happens to arise in a case involving a [Chapter 75] violation." DENC, 32 F.4th at 52 (quoting Gray, 352 N.C. at 74, 529 S.E.2d at 685). Because the Plaintiff has submitted no evidence of actual damages sustained by way of the Defendants' Chapter 75 violation, the Court denies its request for treble damages. See Shell Oil, 928 F.2d at 109 n.7.

## ORDER

IT IS, THEREFORE, ORDERED that the Plaintiff's Motion for Default Judgment [Doc. 9] is **GRANTED**, and **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:**

1. The Defendants, including all officers, members, directors, agents, employees, representatives, and all persons acting in concert or participation with them who receive actual notice of the Default Judgment and Permanent Injunction Order are permanently enjoined and restrained from:

A. Using the VILLAGE TAVERN mark or any confusingly similar mark, in connection with the operation of a restaurant or similar business;

B. Using any false designation of origin or representing or suggesting directly or by implication that the Defendants are affiliated with, associated with, authorized by, or otherwise connected to the Plaintiff;

C. Engaging in any other activity constituting infringement of the VILLAGE TAVERN mark or unfair competition with the Plaintiff through false association, false advertising, or cybersquatting;

D. Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in paragraphs A through C above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs A through C above.

2. The Defendants shall remove all signage featuring the VILLAGE TAVERN mark and delete and/or remove all internet references through

30

which the Defendants have made improper use of the VILLAGE TAVERN mark, including but not limited to the Defendants' online menu and its website or webpage;

3. The Defendants are jointly and severally liable to the Plaintiff for the payment of statutory damages in the amount of $4,000 pursuant 15 U.S.C. § 1117(c).

**IT IS FURTHER ORDERED** that the costs of this action are taxed against the Defendants. The Plaintiff shall submit a bill of costs within fourteen (14) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed: August 16, 2022

Martin Reidinger
Chief United States District Judge